## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| Selectron Korea Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| Textron Systems Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____) | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Selectron Korea Inc. ("Selectron") makes the following allegations against

Defendant Textron Systems Corporation ("Textron"):

### PARTIES

1.     Plaintiff Selectron is a corporation organized under the laws of the Republic of

Korea, with a principal place of business in Seoul, South Korea.

2.     Defendant Textron is a Delaware Corporation with its principal place of business

in Providence, RI.  During the relevant time period, Textron was registered to do business in

Massachusetts, had employees in Massachusetts, and maintained offices and facilities in

Massachusetts.  Upon information and belief, approximately one month after Plaintiff requested

payment of the outstanding commissions that are the subject of this Complaint, Textron was

merged with an affiliated company and withdrew its registration to do business in Massachusetts.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to Mass. Gen.

L. ch. 212, § 4, which provides this Court with general subject matter jurisdiction over all civil

actions.

4.      This Court has personal jurisdiction over defendant Textron pursuant to Mass.

Gen. L. ch. 223A, § 2 and §3, because, during the relevant time period, Textron was registered to

do business in Massachusetts, had employees in Massachusetts, maintained offices and facilities

in Massachusetts, and certain conduct on the part of Textron that gave rise to this cause of action

occurred in Massachusetts.  Furthermore, the Independent Representative Agreement dated

March 1, 2012 that is the subject of this dispute dictates that federal or state court in Boston,

Massachusetts shall be the exclusive forum for any dispute; therefore, Textron has voluntarily

submitted itself to this jurisdiction.  (*See* Agreement, Section 12, attached as Exhibit 1).

5.      The citizenship of the Plaintiff, on the one hand, and the Defendant, on the other,

is diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This

Court, therefore, has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6.      Venue in this Court is proper due to the exclusive forum selection clause in the

Independent Representative Agreement dated March 1, 2012 between the parties that is the

subject of this dispute.  (*See* Exhibit 1, Section 12)

## FACTUAL ALLEGATIONS

### The Agreement

7.      Selectron is a company based in South Korea that is engaged in the defense

industry.  Specifically, Selectron buys/sells defense products and components, as well as serves

as an agent in South Korea for other companies that buy and sell defense products.  Selectron is

the South Korean affiliate of Selectron Industrial Company ("SIC"), which is based in California, United States of America.  Selectron and SIC have common ownership and often engage in business deals with each other.

8.      At all relevant times, Textron manufactured and sold military weapons systems, including internationally.

9.      On March 1, 2012 Selectron entered into an independent representative agreement with Textron and several of its affiliated companies (AAI Corporation; ESL Defence Limited; and Overwatch Systems Limited – collectively "Affiliates") whereby Selectron was to serve as Textron's and its Affiliates' non-exclusive, independent representative in the Republic of Korea (South Korea) in connection with the sale of certain products (hereinafter, the "Agreement").  A copy of the Agreement is attached as Exhibit 1.  The term of the Agreement was three years and it was set to terminate on February 28, 2015.  (*See* Agreement, Section 9(a)).

10.     In return for its services, Selectron was entitled to receive a commission payment on certain products it helped to sell in South Korea.  *See* Agreement, Schedule A.  Under the Agreement, payment of the commission became due and payable within 60 days of receipt by Textron of payment for the product from the end customer through the United States Government.  (*See* Agreement, Section 5).  To the extent that Textron was paid in installment payments, the commission payments were due to Selectron in commensurate pro rata installments.

### The Sale of CBU-105 Sensor Fused Weapons

11.     In large measure due to Selectron's efforts on its behalf, Textron secured a contract to sell 361 units of CBU-105 Sensor Fused Weapons to the Government of South Korea on or about May 29, 2014.  The way this transaction worked was that the Government of South

Korea entered into an agreement with the United States Government for an assortment of weapons systems, and then the United States Government contracted with Textron to supply the CBU-105 units that were part of the order.  These units were to be delivered to and paid for by South Korea in installments between January 2015 and March 2017.  Selectron is not directly privy to the details of the agreement between South Korea and the United States, or between Textron and the United States, but Textron informed Selectron that the main contract value was $243,484,031, and that the total commission payments due to Selectron in connection with this sale were $3,726,778.  (*See* Estimated Compensation Schedule for Selectron Korea, Inc., attached as Exhibit 2).

12.     Not only did Selectron heavily invest and provide extensive services in helping to secure the sale, Selectron also provided additional services to Textron after the sale in connection with educating and training end users of the CBU-105, as well as helping Textron to meet Textron's offset obligations under the sales contract.[1]  For example, Selectron was a party to a Technical Assistance Agreement with Textron and the Republic of Korea Air Force under which Selectron agreed to assist in training the Air Force as part of Textron's offset obligations.  (*See* Technical Assistance Agreement, attached as Exhibit 3).  In the summer of 2014, Selectron facilitated and attended meetings in South Korea with Textron personnel and the ROK Air Force.  Selectron also sent its personnel to Textron's facilities in Wilmington, Massachusetts on two separate occasions in the fall of 2014 to further support this training.

---

[1] An essential element of many international military sales agreements is the so-called "offset" obligation.  For example, when a private defense contractor enters into an agreement with a foreign government to sell a product, there may be a requirement within the agreement that the defense contractor use a parts supplier within the country in order to "offset" some of the cost of the purchase by returning value back to the country.  Sometimes the offset requirement may be fulfilled by transferring relevant technology or providing technical training.

13.     Because this sale was part of what is called the Foreign Military Sales Program of the United States Government, the timing of payments by South Korea and other details of the agreement were not disclosed directly to Selectron.  Instead, the course of dealing between the parties was that Textron would notify Selectron when Textron received a payment so that Selectron could submit an invoice for its commissions.

14.     On January 17, 2015, Textron emailed Selectron requesting an invoice for the first installment of the commission payment in the amount of $206,470, as well as an activity report and a certification that Selectron had not made any improper payments in connection with the sale.  (*See* Todd Alexander email, attached as Exhibit 4).

15.     On January 24, 2015, Selectron provided the requested invoice, along with the activity report and certification.  (*See* 1.24.15 Invoice, attached as Exhibit 5).  Textron paid this invoice on February 26, 2015.

16.     Per Section 9(a), the Agreement terminated by its own terms on February 28, 2015.  Upon the termination of the Agreement, Selectron and Textron and its Affiliates entered into new and distinct three-year agreements for services on terms similar to the Agreement (hereinafter, the "New Agreements").  (*See* New Agreements, attached as Exhibit 6).  At this point, Selectron began providing services to Textron and its Affiliates under the New Agreements.

17.     Although the Agreement had terminated on its own terms, the parties' obligations under several sections of the Agreement expressly survived termination.  The commission payment provision, Section 5, was one of the sections that expressly survived termination.  (*See* Agreement, Section 18).  Accordingly, presumably upon receiving its next installment payment

Textron requested that Selectron submit an invoice for commissions in the amount of $557,468[2]

and an activity report (no request for a certification).

18.     Selectron provided the requested invoice and activity report on July 13, 2015.

(*See* 7.13.15 Invoice, attached as Exhibit 7).  In keeping with the continuing obligations under

the Agreement and the parties' course of conduct, Textron made payment to Selectron in the full

amount of the invoice on September 10, 2015.

### Textron's Termination of the New Agreements

19.     In 2014 the Government of South Korea announced the establishment of a special

unit to investigate and prosecute cases of corruption in the defense contracting industry.

Although dozens of individuals were arrested and indicted by this special unit, a shockingly large

percentage of those individuals were subsequently acquitted.  The acquittal rate or individuals

charged by this special unit was reported to be 10 to 17 times higher than the typical acquittal in

South Korea.  This effort by the Government of South Korea became widely criticized in South

Korea for making hasty arrests and baseless charges, and it was widely thought to be a political

response to other scandals in which the government was embroiled at the time.

20.     Unfortunately, among the many individuals who were investigated, falsely

accused, indicted, and ultimately acquitted, was Mr. Tai Ham, the CEO of Selectron.  (*See*

Supreme Court of Korea Decision in Case 2017Do12125, dated October 25, 2018, attached as

Exhibit 8).[3]  Not only were the allegations against Tai Ham baseless, but they were completely

---

[2] Textron told Selectron that this amount was different than the amount of the second installment in the Estimated Compensation Schedule that Textron had previously provided because there was a change in the shipment schedule.

[3] On February 29, 2020, Tai Ham received an award of monetary compensation from the Supreme Court of South Korea for his wrongful detention and imprisonment.  (*See* Notice of Decision, attached as Exhibit 9).

unrelated to Textron or any efforts by Selectron on Textron's behalf.[4]  Nonetheless, on December 1, 2015, Textron terminated the New Agreements (and only the New Agreements), citing the investigation into Tai Ham and Section 9(c)(5) of the New Agreements.  (*See* 12.1.15 Letter from Danny Lee, attached as Exhibit 10).

21.     Section 9(c)(5) of the New Agreements states in relevant part that Textron and its Affiliates "may" terminate the New Agreements "for cause, which shall include, among other circumstances: … [Selectron] or any of its owners or employees responsible for its services under this Agreement has become the target of an investigation or prosecution by any government authority for alleged corruption… [Selectron] shall not be entitled to receive, and [Selectron] hereby waives rights to, any compensation following termination for cause, even if resulting from [Selectron's] efforts prior to such termination."  (*See* New Agreements, Section 9(c)(5)).

22.     The purpose of this provision is to protect Textron from potential exposure under the Foreign Corrupt Practices Act.  Specifically, the provision purporting to waive any compensation is intended to prevent Textron from being accused of being part of an improper payment scheme should it turn out that such payments to its representative were used to pay bribes on Textron's behalf.  Because the investigation into Tai Ham had nothing to do with Textron or its Affiliates, or the deals that Selectron was pursuing on their behalf, the basis for termination of the New Agreements for cause under Section 9(c)(5) did not exist and was a pretext.

---

[4] The allegations against Tai Ham related to Selectron's successful efforts to secure a contract in 2013 on behalf of a United Kingdom company in connection with a South Korean naval program called "Maritime Operation Helicopter Program."  Tai Ham was acquitted of all charges. Following the Supreme Court of Korea's upholding of Tai Ham's (and other co-defendants') acquittal, that United Kingdom company paid Selectron its full commission.

23.     Further evidence of this pretext is that, at the very time Textron terminated the New Agreement with Selectron on the supposed basis of the investigation into Tai Ham, Textron pressed for completion of a transaction involving one of its affiliates and Selectron's affiliate, SIC.  Specifically, Textron's affiliate, Textron Systems Electronic Systems UK Ltd., had executed a product sale to the Government of South Korea in which SIC would serve as a "middleman" in the transaction, essentially buying the products from Textron's UK affiliate and then selling them to South Korea.  On December 3, 2015 – just two days after terminating the New Agreements – Textron sent a letter to Tai Ham referencing the investigation, but stating that it would, "nevertheless", like to complete the sale to South Korea.  (*See* 12.3.15 Letter from Danny Lee, attached as Exhibit 11).  All that Textron required to move forward with the sale was a certification that no improper payments had been made in connection with the transaction. (*See id.*).  Thus, while Textron cited the investigation into Tai Ham as the basis to terminate the New Agreements (and later to avoid paying Selectron the commissions it had earned under the Agreement), when it came to completing a transaction so that it could get paid, the investigation was of no consequence to Textron.  This double standard is further evidence that Textron's grounds for termination of the New Agreements was pretext.

24.     Nonetheless, because there were no payments due to Selectron under the New Agreements, and it still fully expected to be paid the commissions owed to it under the Agreement, Selectron did not dispute the termination at that time.  In fact, Textron continued to seek Selectron's assistance with respect to the prior weapons sale even after the termination of the New Agreements.

## **Textron's Failure to Pay Commissions Due**

25.     Regardless of Textron's termination of the New Agreements, Textron's obligation to continue to pay the commission payments that Selectron had already earned under the Agreement remained.  (*See* Agreement, Sections 5 and 18).  Upon information and belief, as of 2017, Textron received the remaining installment payments from the Government of South Korea for the CBU-105's.  Despite this, Textron did not inform Selectron of the status of deliveries of CBU-105 units or request invoices from Selectron as was the course of conduct under the Agreement, nor did Selectron make any further commission payments.

26.     On December 11, 2019, based on its understanding and belief that the final delivery of CBU-105's had been made and accepted, Selectron sent a letter to Textron requesting payment of the outstanding commissions.  (*See* 12.11.19 Letter from Choi, Hi Hwan, attached as Exhibit 12).

27.     On January 2, 2020 Textron responded by referencing its termination of the New Agreements back in December 2015, apparently implying that the pretextual termination of those agreements justified its refusal to pay the commissions owed under the entirely separate 2012 Agreement – an obligation that survived termination of the Agreement in any event.  (*See* 1.2.20 Letter from David T. Scaringella, attached as Exhibit 13).

28.     Further, by the time of Textron's January 2, 2020 letter, Tai Ham was no longer under investigation, and had, in fact, been fully acquitted of all charges by the Supreme Court of Korea.  Thus, there was no basis to terminate the Agreement for cause as of January 2, 2020, and no risk that the commission payments owed to Selectron could expose Textron to liability under the Foreign Corrupt Practices Act in connection with that prior investigation.  Moreover, as described above, Textron's December 3, 2015 letter to Tai Ham (Exhibit 11) demonstrates that,

to the extent that Textron had any concerns regarding exposure under the Foreign Corrupt Practices Act in connection with the investigation, a certificate of compliance from Selectron was sufficient to address those concerns.  Simply put, Textron's stated basis for refusing to pay Selectron the commission payments that are due was false and pretextual.

## COUNT I

### Breach of contract

29.     Selectron incorporates by reference all allegations contained in this Complaint as if fully set forth herein.

30.     Pursuant to Section 2 of the Agreement, Selectron was to provide services to Textron and its Affiliates, including helping Textron sell the CBU-105 Sensor Fused Weapon in South Korea.

31.     Pursuant to Sections 4 and 5 of the Agreement, Textron was obligated to pay certain commissions to Selectron on all purchases of CBU-105 units in Korea.

32.     In 2014, through the extensive efforts of Selectron, Textron sold 361 CBU-105's to the government of Korea, entitling Selectron to a total estimated commission payment of $3,726,778.

33.     Although the Agreement terminated on its own express terms on February 28, 2015, Textron's obligations to pay the earned commissions to Selectron survive the termination. As of July 2015, Textron made commission payments totaling $763,938.  Upon information and belief, as of 2017, all of the CBU-105 units were delivered and accepted and paid for by the government of Korea, making the remaining estimated commission payment of $2,962,840 due to Selectron.

34.     Textron breached the Agreement by failing to inform Selectron of the receipt of payments from the government of Korea, request invoices and any other necessary documentation from Selectron in order to process the commissions, and pay the outstanding commissions due in accordance with the terms of the Agreement and the course of dealing between the parties, as well as by purporting to terminate the Agreement for cause without basis and on pretext.

35.     Selectron has suffered damages as a result of these breaches, including $2,962,840 in unpaid commissions.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

36.     Selectron incorporates by reference all allegations contained in this Complaint as if fully set forth herein.

37.     Under Massachusetts law, all contracts have an implied covenant of good faith and fair dealing.  This covenant provides that neither party "shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-472 (1991).

38.     As set forth above, Textron breached this covenant by purporting to terminate the Agreement on a false and pre-textual basis and refusing to pay the remaining commissions due to Selectron.

39.     Selectron has suffered damages as a result of this breach, including an estimated $2,962,840 in unpaid commissions.

## COUNT III

### Unjust Enrichment

40.     Selectron incorporates by reference all allegations contained in this Complaint as if fully set forth herein.

41.     As set forth above, Selectron provided extensive services to Textron that enabled Textron to complete the sale of CBU-105's to the Government of Korea, as well as additional services.

42.     Textron has refused to pay for the value of those services and has been unjustly enriched in the amount of at least $2,962,840.

## COUNT IV

### Violations of M.G.L. c. 93A

43.     Selectron incorporates by reference all allegations contained in this Complaint as if fully set forth herein.

44.     As set forth above, Textron and Selectron were engaged in commerce in Massachusetts.

45.     As set forth above, Textron knowingly and willfully engaged in unfair and deceptive acts and practices in the conduct of commerce in violation of M.G.L. c. 93A, § 2, including by, after securing the benefits of Selectron's services, refusing in January 2020 to pay the remaining commissions clearly owed to Selectron under the Agreement on the false basis of its earlier pretextual termination of the separate New Agreements.

46.     Textron's knowing and willful unfair and deceptive acts and practices occurred primarily and substantially in Massachusetts.

47.     M.G.L. c. 93A, § 11 provides that "any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two … may … bring an action in the superior court…"

48.     As set forth above, Selectron has been harmed by Textron's knowing and willful unfair and deceptive acts and practices.

## PRAYER FOR RELIEF

Selectron requests the following relief:

A.     The Court find that Textron has:

        (i) breached the Agreement;

        (ii) breached the implied covenant of good faith and fair dealing;

        (iii) been unjustly enriched; and

        (iv) violated M.G.L. c. 93A.

B.     The Court award Selectron damages in the amount of $2,962,840 (or some other amount proven to be the total earned commission), in addition to other amounts to be determined at trial;

C.     The Court to award Selectron multiple damages and attorneys' fees pursuant to M.G.L. c. 93A;

D.     The Court to award Selectron prejudgment interest at the rate of 12% from the date of Textron's breach and costs of court; and

E.     The Court grant Selectron such other and further relief as may be just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,

SELECTRON KOREA INC.,

By its attorneys,


/s/ John E. (Jed) DeWick
Raymond Ausrotas (BBO No. 640315)
John E. (Jed) DeWick (BBO No. 654723)
jdewick@arrowoodllp.com
ARROWOOD LLP
10 Post Office Square, 7th Flr. South
Boston, MA 02109
Tel: 617-849-6200

June 24, 2020